Good morning everyone. Judge O'Scanlan and I would like to welcome back and thank Judge Ezra from the District of Hawaii who is sitting with us today. Judge Ezra, thank you so much for sitting with us and welcome. Thank you very much. The cases will be called in the order set upon this day on the calendar, I'm sorry. The first case, Lujano-Sapato v. Sessions, is to be submitted on the briefs. The first case on the calendar for argument is United States v. Orsinger. Counsel to the Court, may I please approach and proceed? Signing Judge Rawlinson and may it please the Court, Thomas Phelan for Johnny Orsinger. Procedural history of this case is instructive, I think, in that there's initially an appointment of Mark Victor to do the appeal. He filed an Anders brief and moved to withdraw the motions now. Judge O'Connor can be granted his motion. And with some specificity itemized for me, I was charged with addressing three issues. And in noting the quality of the issues that the pale charged me with, I think it's instructive on how this case should eventually play out. The pale asked, did the district court commit reversible error in resentencing by failing to assess whether Orsinger is one of the rare juvenile offenders who is permanently incorrigible? And by failing to address Orsinger's argument that he is maturing and can be really rehabilitated. Clearly, the pale's focus was singularly on Orsinger, his nature, and his characteristics. And the analysis of the crime, horrendous, heinous, as it undoubtedly was, is only for the limited purpose of also permitting one to gauge the nature and characteristics of the juvenile, Mr. Orsinger. Counsel, it seems to me that the court considered all of the 3553 factors, did it not? I think it did. But my position, Judge, is that Miller and Montgomery struck 3553A. That is to say, well, by the way, I'm hoping to reserve a minute for, but we're not dealing with mandatory life here. In other words, the sentence wasn't a mandatory life. This was a sentence based on the record and the evaluation factors. Correct. But as I say, Miller and Montgomery struck 3553A. Counsel, you would agree, wouldn't you, that there are no magic words that the judge has to recite in terms of these analyses? I agree. So what is it that you think the district court should have said that it did not say? Well, Judge Campbell's focus, as Mr. Koczynek's focus, is solely on the horrendous and heinous, the horrendousness and the heinousness of the crime. And that analysis simply cannot be found in Miller, Montgomery, Graham, Roper, and Atkinson. But basically, aren't we just looking to see whether or not the district court determined that this particular juvenile defendant was incorrigible or unable to, it had not reflected the ability to benefit from rehabilitation or some finding along those lines? I don't think that the record supports the district judge's reimposition of multiple natural life sentences. The only evidence in the record, including prison infractions, the only evidence in the record indicated that, in fact, Mr. Horsinger was anything but terminally incorrigible. In fact, the record shows, and the judge accepted it, that Mr. Horsinger was doing some good things in prison, pursuing his GED, beating him. So that it's impossible for me, reviewing the record, to understand what it was other than Judge Campbell's single-minded focus on the horrendousness of the crimes that takes Horsinger out of the Miller, Montgomery role. It's the rarity of the juvenile defendant, not the uncommonness of the crime, as the judge said, that is the touchstone for proper application of Miller and Montgomery. Montgomery was clear that an LWOP sentence is imposable for the rarest of juvenile offenders, whose crimes reflect permanent incorrigibility, irreparable corruption, and irretrievable depravity. And on this record, there is no indication that all of those things that Montgomery requires had, in fact, been proved. Counsel, it appears that at pages, beginning at page 112 of the record, that the court talked about the defendant, about his upbringing, about the difficulties that he had faced, and about his positive improvements in the prison system. So what more do you think the district court should have done? Well, having come to those conclusions, based on a review of the record, I think the district court was obligated to impose a reasonable term of years on Mr. Horsinger, such that he has a reasonable probability of release during his lifetime. Is it your argument that the court was not permitted to consider the circumstances of the crime at all? No. Well, I wouldn't go that far. But what I see happening in this case is that Judge Campbell was very single-minded in his focus on the crimes, and that upended what, in my view, is the proper application of Miller and Montgomery. One may review the crime for purposes of determining the nature and characteristics of the offender, but that's just one of many ways that one can assess a juvenile offender for purposes of determining whether he should receive a life sentence. Now, counsel, on page 116, given in line 9, the judge said, the statute gives me a difficult task. It tells me, with these facts in mind, both the facts about you and the facts about your crime, how to dispatch a descent. So what was wrong with that approach? Well, I think, as I said before, I think that his overarching focus on the heinousness of the crime sidetracked Judge Campbell in applying Miller and Montgomery correctly. I'm down to 48 seconds. All right. Thank you, counsel. Okay. Thank you. I'm pleased the court and I'm here on behalf of counsel for the United States. The sentencing judge, Judge David Campbell, expressly recognized Miller's requirement that life sentences for juveniles are to be uncommon. He specifically found this case uncommon. Did he find the case uncommon or did he find the defendant uncommon? I think as opposing counsels are arguing, I think the court focused on the case being uncommon as opposed to the juvenile defendant being among the rare number that are encouraged. What's your response, Aaron? I think it's clear that Judge Campbell found this case and this defendant and this crime uncommon. If you look at his very thoughtful, detailed discussion of sentencing on the record, what we have here is a defendant and a case that is so extraordinary and so rare and so uncommon that we don't have a similar fact pattern in any of the cases that I found or any of the cases that the defense has cited. What we have here is a defendant who already had a juvenile criminal record involving assaulting his own friend and mother, then between ages 16 to 16 1⁄2, we know that he murdered in execution style a 47-year-old grandfather, David Begay, and handed his gun to a co-defendant who then murdered Jespert Singer. Both those men were hot tied and defenseless. We know that after having two months to reflect upon those murders, the defendant did something even more brutal involving even more vulnerable victims. The court is well aware of the facts involving the defense. Murder of Alice Slim, a 63-year-old grandmother, in the close confines of Birch Rock and in the presence of her 9-year-old granddaughter. And what happened later with the 9-year-old granddaughter, how Ms. Dorsey took a rock and killed her by hitting her in the head. Returning the next day, making this case even more extreme and outrageous, returning the next day and dismembering the victims tied the evidence. The extraordinary facts of this case don't even end there, though. They extend to the recess. The question before us is whether those horrific facts are sufficient to outweigh some of the other considerations that Judge Campbell brought to bear. Sure. So I guess the question is, is there anything in Miller or Montgomery that suggests that that can't be appropriate in the right case? Yes. So in Miller, there is a discussion of various factors that the court needs to consider. Well, Miller, first of all, states that our decision mandates only that a senator follow a certain process considering the defender's youth and intended purpose. What exactly are you reading from? Well, right now you're reading from page 2471, where they talk about the decision mandates only that the senator follow a certain process considering youth and intended characteristics before imposing a particular penalty. But a couple of pages before that on page 2469, Miller talks about various factors that can be considered in that analysis, including chronological age of the defendant, his family and home environment. 2469, what paragraph were you on? 14 to 15. Did you notice? And what age note are you reading from? I believe it's under age note 13. It's a paragraph that starts with the words, in light of Graham's brief. I'm sorry, no, it's the next paragraph that starts with, so Graham and Roper. Yeah, and then it says to recap in almost several factors. One, why those factors involve the circumstances and the loss on offense, including the extent of the defendant's participation in the conduct, and the way familial and peer pressures may have affected him. Clearly, there is allowance for considering the facts and circumstances of the crime, and what Judge Campbell did here in his sentencing decision is he explored the nuances and the details of what the defendant did and how he did it and who he did it to, and he was clearly entitled under Miller and Montgomery to do that. Montgomery goes on to recognize that this hearing gets substantive. It gives effect to the substantive right recognized in Miller that these sentences are to be reserved for circumstances. Miller was a mandatory life, and isn't that distinguishable? Yes, absolutely. So this Court, in post-Miller cases such as Bell v. Uribe, recognized that when you're working with a non-mandatory sentencing scheme, the censor may balance aggravating and mitigating factors and impose the sentence of life in circumstances very similar to this. In that case, the defendant was 16. She had murdered her mother with the help of two accomplices, and there were findings in that case involving torture, lying in wait, and intentional killing. The sentences are balanced against mitigating factors, including the defendant's upbringing, history of substance abuse, and might have a prior criminal record of failing on balance, that a life without parole status was warranted, and this Court deferred. In two unpublished decisions, LeMoyne and Adams, the Court took a similar approach. The defendants' reply brief doesn't discuss these cases, but I think they make plain that in a non-mandatory sentencing context, Judge Campbell did exactly what Miller called upon him to do. The opposing counsel suggests that 3553 to 3553 factors are completely trumped by William Miller. Do you see a way to reconcile the 3553 factors? Sure. So 3553 involves considering the defendant and his or her personal characteristics and the nature of the crime, and I think all of that is wrapped up in the Miller analysis as well. So I think those two clearly... My recollection is in one of the early guideline cases, Justice Kennedy directed the district courts to look at the whole person. That's right. That's what you do in Miller. Yes, yes. You look at the whole person, taking into account, in particular, youth and its attendant characteristics, which the district court did here. And we only have just a focus on the crimes themselves, and we also know that at the beginning of the sentencing transcript, the judge specifically addressed attempts by the defendant, after having had 14 years to reflect on these crimes, to back away from his responsibility for these crimes. So he challenged the factual basis of the revised PSRs. For instance, he claimed in the resentencing that he never assaulted Jane Doe, the 9-year-old girl. But Judge Campbell said that is highly contradicted by the record, including the factual basis for his plea agreement. Counsel, on the record, may we look to find whether the district court expressly articulated that this defendant was permanently incorrigible, or did he say that most clearly? Well, I think he said that most clearly by finding that this case is uncommon, and by recognizing the language in the transcript that we can look to to discern the corpse determination. Sure. Well, the uncommonness is at ER 123, but I think you have to look at the totality of the judge's decision and the care with which he took to consider all of these factors. No, he struggled with what the right outcome is in this case. Had he read with care everything submitted by the defense, he'd know that he clearly did not. Counsel, are you conceding that the court did not make an express finding that this defendant was permanently incorrigible? So those exact magic words, if you will, are not in the transcript, but they're not required. Montgomery itself explicitly says that Miller does not impose a formal fact-finding requirement. And that's on page 735 of the Montgomery decision. What's important is that the process is followed. That dissenting judge weighed in on its attending characteristics, taking into consideration the whole person and the circumstances of the crime, particularly the extent and nature of the defendant's involvement, and arrived at a non-mandatory determination that life is appropriate, which is exactly what Judge Kuehl did in this case. And just a couple other things about facts that are clearly in the record and resentencing and that kind of support the overall conclusion in this case. We know that the defendant's bone mitigation specialist, Lee Franklin Miller, noted that 14 years after these crimes had occurred, the defendant was still having trouble in prison, becoming involved in inappropriate, unacceptable violent behaviors. We know he was involved in several assaults in prison. We also know that his own forensic psychologist, Ricky, for purposes of the resentencing, diagnosed him with antisocial personality disorder, which the defense admits on page 14 of their reply brief, indicates pervasive disregard for and violation of the rights of others. So there was a lot in this record to support and reinforce Judge Campbell's position. All right. Counsel, you've been seeing your time. Thank you very much. Thank you. Thank you. Otto? Thank you, Judge. Your policy. So Judge Campbell did not make findings of permanent incorrigibility in sentencing. Mr. Hersinger? Was he required to do so? Well, yes. Yes. What's your response to opposing counsel's reliance on the language in Montgomery that appears to state that no factual finding is required? Well, the touchstone, Miller's central intuition, as the Montgomery court said, is that children who commit even heinous crimes are capable of change. The vast majority of juvenile offenders faces a punishment the law cannot impose upon you. So it seems to me, given those two fairly strong statements in Montgomery, that the court is obligated to make that finding. I want to discuss just for a minute the transition from Graham to Miller. What's made by the court acknowledging that whether a juvenile defendant should be eligible for a non-life sentence is irrespective of the crime. It's irrespective of the crime. Graham was natural life for non-homicide offenses. We understand your argument, counsel. Thank you. Thank you very much. Thank you both, counsel. The case has argued and is submitted for decision by the court.
judges: O'scannlain, Rawlinson, Ezra